IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROGER E. DANNELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 07-4122-JAR-JTR |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding no error in the Commissioner's final decision, the court recommends the decision be AFFIRMED.

**I.  Background**

Plaintiff applied for DIB and SSI on May 27, 2004, and subsequently alleged that he was disabled beginning on May 12, 2003.  (R. 12, 91-94, 446-50).  Plaintiff's applications were denied initially and on reconsideration, and plaintiff requested

a hearing before an Administrative Law Judge (ALJ).  (R. 12, 45-
46, 53, 455-56, 459-62).  A hearing was granted at which
plaintiff was represented by counsel, and testimony was taken
from plaintiff and from a vocational expert.  (R. 12, 463-506).
Thereafter, the ALJ issued a decision finding that plaintiff is
not disabled within the meaning of the Act, and denying
plaintiff's applications.  (R. 12-25).

The ALJ found that plaintiff meets the insured status
requirements of the Act, and has not engaged in substantial
gainful activity since his alleged onset date.  (R. 14).  He
found that plaintiff has "severe" impairments of degenerative
disc disease, status/post arthroscopic knee repairs bilaterally,
hypertension, major depressive disorder, post traumatic stress
disorder, and panic disorder with agoraphobia; but that plaintiff
has no impairment or combination of impairments which meets or
medically equals the severity of an impairment in the Listing of
Impairments.  (R. 14-16).  In evaluating the severity of
plaintiff's impairments, the ALJ applied the psychiatric review
technique contained in 20 C.F.R. §§ 404.1520a and 416.920a.  (R.
16-17).  He determined that plaintiff's mental impairments cause
mild restrictions in activities of daily living; mild difficulty
maintaining social functioning; and moderate difficulty
maintaining concentration, persistence, or pace; and that
plaintiff has not had "repeated episodes of extended

-2-

decompensation, inability to adjust to environmental changes, or the need for a highly supportive living arrangement." (R. 17). Consequently, he determined plaintiff's mental impairments are "severe" within the meaning of the Act, but do not meet or equal the severity of any listed mental impairments. Id.

The ALJ considered the record evidence, the credibility of plaintiff's allegations of symptoms resulting from his impairments, and the medical opinions contained in the record, and assessed plaintiff's residual functional capacity (RFC). (R. 17-24). He found that plaintiff's allegations regarding his symptoms "are not entirely credible." (R. 19). He gave substantial weight to the opinion of Dr. Estivo, a treating orthopedic specialist, adopting a portion of that opinion. (R. 21). He found that the opinion of plaintiff's primary care physician, Dr. Handshy, was not worthy of controlling weight, and determined not to give substantial weight to the opinion except to the extent Dr. Handshy restricted plaintiff to "sedentary lifting restrictions." (R. 21-22). The ALJ did not give substantial weight to the opinion of treating psychiatrist, Dr. Williams, that plaintiff has "poor to no ability to perform most mental work functions and would be expected to incur more than 3 absences a month due to his mental disorders." (R. 22).

In consideration of the evidence and the analysis discussed above, the ALJ concluded that plaintiff is capable of performing

sedentary work limited by the need to alternate sitting and standing every thirty minutes; to avoid ladder, rope, and scaffold climbing; and to avoid certain environmental factors. (R. 17).  He found that plaintiff is "capable of understanding, remembering, and carrying out simple instructions consistent with unskilled work."  (R. 17-18).

The ALJ found plaintiff is unable to perform his past relevant work, but is able to perform other jobs existing in significant numbers in the economy and is, therefore, "not disabled" within the meaning of the Act.  (R. 24-25). Consequently, he denied plaintiff's applications.  (R. 25).

Plaintiff disagreed with the decision and sought but was denied Appeals Council review.  (R. 5-8).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 5); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.

-4-

Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial
evidence is more than a scintilla, but less than a preponderance,
it is such evidence as a reasonable mind might accept to support
a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th
Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
The court may "neither reweigh the evidence nor substitute [it's]
judgment for that of the agency."  White, 287 F.3d at 905
(quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799,
800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172
(10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not
simply a quantitative exercise, for evidence is not substantial
if it is overwhelmed by other evidence or if it constitutes mere
conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d
222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that he has a physical or mental impairment which
prevents him from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that he is not only unable
to perform his past relevant work, but cannot, considering his
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC before continuing.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751

-6-

n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the economy within plaintiff's capacity.  <u>Id.</u>;
<u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred:  (1) in evaluating the
severity of plaintiff's mental impairments, (2) in weighing the
medical opinions, (3) in evaluating the credibility of
plaintiff's allegations regarding symptoms, and (4) in assessing
plaintiff's mental RFC.  In his final argument, plaintiff notes
that "In a subsequent claim the Defendant has found plaintiff
disabled indicating reversal is warranted." (Pl. Br.
58)(underline omitted).  The Commissioner argues that the
credibility determination was "linked to specific findings of
fact fairly derived from the record, and should be affirmed by
the court;" (Comm'r Br. 10)(citing <u>White</u>, 287 F.3d at 909-10);
that the ALJ's evaluation of the medical opinions applied the
correct legal standard and "articulated legally sufficient and
factually supported reasons for" the weight assigned the
opinions; (Comm'r Br. 14); and that the ALJ properly evaluated
the severity of plaintiff's mental impairments and properly
assessed plaintiff's RFC based thereon.  (Comm'r Br. 14-17).

Although the evidence might be weighed as explained by
plaintiff and might, therefore, support a finding that plaintiff
was disabled during the relevant period, the court's duty is only
to review the decision at issue and to determine whether the

Commissioner applied the correct legal standard and whether
substantial evidence supports the Commissioner's final decision.
Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007).  "[T]he
possibility of drawing two inconsistent conclusions from the
evidence does not prevent an administrative agency's findings
from being supported by substantial evidence."  Cruse v. Bowen,
867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed.
Maritime Comm'n, 383 U.S. 607, 620 (1966)).  "Although the
evidence may also have supported contrary findings, '[the court]
may not displace the agency's choice between two fairly
conflicting views, even though the court would justifiably have
made a different choice had the matter been before it de novo.'"
Oldham, 509 F.3d at 1257-58(quoting Lax, 489 F.3d at 1084).  As
explained below, the court finds that the ALJ applied the correct
legal standards and explained his analysis, and the decision is
supported by substantial evidence in the record as a whole.
Therefore, the court recommends that the Commissioner's decision
be affirmed.

**III. Credibility**

An ALJ's credibility determinations are generally treated as
binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th
Cir. 1990).  "Credibility determinations are peculiarly the
province of the finder of fact" and will not be overturned when
supported by substantial evidence.  Hackett v. Barnhart, 395 F.3d

1168, 1173 (10th Cir. 2005).  Therefore, the court will usually defer to the ALJ on matters involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" <u>Hackett</u>, 395 F.3d at 1173(quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Here, the ALJ summarized the law applicable to evaluating the credibility of a claimant's allegations of limitations resulting from symptoms from his impairments.  (R. 18-19).  The ALJ evaluated the evidence and stated many reasons (the court identified ten) for finding that plaintiff's allegations are only partly credible.  (R. 19-20).  Plaintiff does not controvert the facts as summarized by the ALJ, and does not argue that the reasons given by the ALJ are not supported by record evidence. Rather, much of his argument summarizes the evidence and explains how, in his view, the evidence supports a finding contrary to that of the ALJ.  Such an approach essentially invites the court to reweigh the evidence and make a <u>de novo</u> determination. However, as explained above, the court may not do so, and may not substitute its judgment for that of the Commissioner.  <u>Jensen v. Barnhart</u>, 436 F.3d 1163, 1168 (10th Cir. 2005); <u>Hackett</u>, 393 F.3d at 1173.  Nonetheless, the court briefly addresses several of plaintiff's individual arguments.

Plaintiff claims on page 50 of his brief that the ALJ improperly made "speculative inferences" regarding Dr. Stein's report when he stated one of his reasons for finding plaintiff's allegations not credible:  "Additional improvement in symptoms would be expected with the claimant's weight loss as many of his limitations noted by Dr. Stein were related to the claimant's body size (exhibit 7F)."  (R. 19).  Plaintiff argues this reason is improper because "Dr. Stein never said 'Additional improvement in symptoms would be expected with the claimant's weight loss.'" (Pl. Br. 50).

Both plaintiff's argument and the ALJ's reason are based on the fact that plaintiff lost weight during the period at issue. At the time of Dr. Stein's Independent Medical Examination (Mar. 23, 2004), plaintiff was 5-foot 10 inches and weighed 280 pounds, and Dr. Stein's report described him as "a well developed, obese male."  (R. 270).  The ALJ noted that plaintiff weighed 312 pounds in Jan. 2004, and 251 pounds in Dec. 2006.  (R. 15)(citing Ex. 5F/57; 7F/73; 15F).[1]  Moreover, the record indicates that plaintiff weighed 241 pounds on Mar. 6, 2007, and plaintiff testified at the hearing on May 10, 2007 that he weighed 240 pounds.  (R. 418, 476-77).

---

[1]The decision states plaintiff weighed 312 pounds in May, 2004, but the portion of the record cited shows a weight of 312 pounds in <u>Jan.</u>, not May 2004.  (Ex. 5F/57 (R. 255)).  Plaintiff weighed 280 pounds in Mar. 2004.  (R. 270).

Dr. Stein reported, "Patient can walk on heels and toes with some difficulty due to body habitus.  He has difficulty raising his body weight on either calf or raising his body weight from chair on either quadriceps.  This is most likely due to his weight." (R. 270-71).  In summarizing his opinion whether plaintiff was a candidate for surgery on his back, Dr. Stein noted that certain "factors are significant enough to make me reluctant to recommend the surgery." (R. 271-72).  Dr. Stein discussed weight as one of these factors, "While his weight is not an absolute contraindication, it is certainly a substantial concern. . . . For these reasons, I do not believe Mr. Dannels is a candidate for lumbosacral fusion surgery at this time.  If he should accomplish a substantial weight reduction and long-term strengthening program for the abdomen and back, markedly reduce or eliminate his dependence on narcotic analgesics, and undergo psychological evaluation to rule out the presence of secondary, emotional factors in his presentation, it would be reasonable to reevaluate the situation." (R. 272)(emphasis added).

Based upon the record as quoted above, the ALJ appropriately and reasonably noted that many of plaintiff's limitations stated by Dr. Stein relate to plaintiff's weight.  The record also reveals that plaintiff lost approximately forty more pounds after seeing Dr. Stein.  Dr. Stein stated that "If [plaintiff] should accomplish a substantial weight reduction [in conjunction with

other requirements], it would be reasonable to reevaluate the situation." (R. 272). Even if forty pounds is not a "substantial weight reduction" as contemplated by Dr. Stein, the ALJ's conclusion, that some additional improvement in symptoms would be expected after that additional weight loss, is supported by a fair reading of Dr. Stein's report.

Plaintiff also finds error in the ALJ's statement that "There were no conclusive recommendations for surgery by any orthopedic or neurological source." (Pl. Br. 51)(quoting (R. 19)). Plaintiff implies that the ALJ's statement is erroneous because plaintiff testified that surgery was recommended but had not been performed only because of lack of insurance or finances, and because "Dr. Gorecki was actually preparing to perform surgery." (Pl. Br. 51). There are several reasons plaintiff's implications fail. First, the credibility of plaintiff's testimony is what is at issue in the credibility analysis, so plaintiff's bare testimony is scant support for an assertion that plaintiff's allegations are credible. Second, plaintiff's testimony, even if completely credited, is not substantially probative of whether there has been a "conclusive recommendation" for surgery from a medical specialist.

Finally, the ALJ's statement--that there was "no conclusive recommendation for surgery by any orthopedic or neurological source"--is supported by Dr. Gorecki's records. After his first

-12-

visit with plaintiff on May 6, 2003, Dr. Gorecki suggested to plaintiff that "he continue with conservative management and complete his epidural steroid injections, try Medrol Dosepak, try Percocet for a short while instead of Lortab and physical therapy to see if this will improve his symptoms." (R. 245).  On October 7, 2003, Dr. Gorecki noted that he gave plaintiff "information about conservative management of back pain." (R. 243).  Finally, on Dec. 3, 2003, Dr. Gorecki noted that plaintiff "elects to proceed with ALIF[2] at 5-1" (R. 240), and informed Dr. Handshy that plaintiff "plans to proceed with ALIF at 5-1." (R. 239).

Although Dr. Gorecki was prepared to perform surgery on plaintiff's back, his treatment notes and explanatory letter to plaintiff's primary care physician refer to the decision to perform surgery as plaintiff's "election," or plaintiff's "plan." (R. 239, 240).  Nowhere does the record indicate that Dr. Gorecki unequivocally recommended surgery as the answer to plaintiff's back pain.  Dr. Gorecki's treatment notes reveal that Dr. Gorecki originally intended to manage plaintiff's back pain with "conservative management," and proceeded with plans for surgery

_____

[2]Although Dr. Gorecki does not explain the meaning of "ALIF," Dr. Ebelke examined plaintiff for a "Comprehensive Second Opinion" on Jan. 21, 2004, and stated "It's my understanding that Dr. Gorecki has recommended anterior lumbar interbody fusion at the L5-S1 level." (R. 254).  Thus, the court accepts Dr. Ebelke's statement and finds that "ALIF" means "anterior lumbar interbody fusion," and that Dr. Gorecki recommended the procedure.

only after <u>plaintiff</u> continued to describe "fairly constant mechanical low back pain" (R. 244), or "severe incapacitating mechanical back pain" despite treatment.  (R. 241).  The court cannot find that the ALJ erred in concluding that these facts along with Dr. Ebelke's refusal (R. 256-57), Dr. Stein's hesitancy (R. 272), and Dr. Estivo's decision not to recommend surgery (R. 261, 264), constitute "no conclusive recommendation for surgery by any orthopedic or neurological source."

Plaintiff devotes two pages of his argument to a summary of the third-party statement of plaintiff's son, inviting the court to reweigh this statement in reviewing the credibility of plaintiff's allegations.  (Pl. Br. 52-53).  He concludes this portion of his argument, stating:  "In this case, the decision does not reflect that the ALJ considered the above written testimony or gave any reasons for ignoring such testimony."  (Pl. Br. 53).  This argument is without merit.  First, as discussed above, the court may not reweigh the evidence.  Moreover, the ALJ did, in fact, consider the "third-party function report" completed by plaintiff's son, and specifically determined that it "is not fully credible" because it is inconsistent with activities reported by plaintiff.  (R. 20).

Finally, plaintiff claims it was error for the ALJ to rely on the fact that "claimant was able to lift two 35-pound dumbbells with only minimal soreness during physical therapy on

-14-

May 12, 2004 (exhibit 17F/157[(R. 349)]), which exceeds the lifting restrictions" in the ALJ's RFC assessment. (Pl. Br. 53)(quoting(R. 20)). Plaintiff argues this is error because the ALJ thereby failed to consider that RFC must be limited to plaintiff's capacity for <u>sustained performance</u>, eight hours a day, five days a week. <u>Id.</u> This argument is also without merit. Plaintiff misses the significance of the ALJ's stated reason. The ALJ gave this as a reason for finding plaintiff's allegations of limitations not credible. As the ALJ stated, plaintiff testified that he could lift only ten pounds. (R. 19); <u>see also</u> (R. 487)(plaintiff's testimony that he could comfortably lift "probably five or ten pounds."). Thus, it is relevant to plaintiff's credibility that physical therapy notes indicate plaintiff was able to lift <u>two</u> 35-pound dumbbells "with only minimal soreness." (R. 20). The ALJ specifically noted that two 35-pound dumbbells was "more than the lifting restriction in" the RFC assessed by the ALJ. (R. 20). In his RFC assessment, the ALJ found that plaintiff is able to lift ten pounds occasionally, and nominal weights frequently. (R. 17). The ALJ's comparison distinguished between ability based upon ultimate exertion(two thirty-five pound dumbbells), and capacity for sustained performance(ten pounds occasionally). It was not error to find that plaintiff's ability to lift two 35-pound barbells during physical therapy with only minimal soreness is inconsistent with

plaintiff's stated ability to lift only five to ten pounds.  The

reason given is a proper additional reason to discount the

credibility of plaintiff's allegations.  Plaintiff makes other

credibility arguments which the court has considered and found

equally unmeritorious.

## IV.  Evaluation of Medical Opinions

Plaintiff claims the ALJ erred in failing to give

controlling weight to the treating source opinions of Dr. Handshy

and Dr. Williams, and in allegedly failing to discuss the

findings of Dr. Gorecki.  (Pl. Br. 34-47).  Plaintiff dedicates

specific titled portions of his argument regarding medical

opinions to "Dr. Handshy," "Dr. Gorecki," "Dr. Estivo," and "Dr.

Williams."  (Pl. Br. 37-47).  He also makes arguments relating to

medical opinions from Dr. Ebelke, Dr. Stein, and an unnamed

doctor who examined plaintiff on August 23, 2004.[3]  (Pl. Br. 42,

50, 51, 54).  The Commissioner argues the ALJ applied the correct

legal standard in evaluating the medical opinions, and

---

[3]The report of the August 23, 2004 examination, entitled
"Disability Physical" appears at two locations in the
administrative record.  (R. 276-77, 414-15).  Neither the ALJ in
the decision, nor plaintiff or the Commissioner in their briefs
identify the doctor who provided the report at issue.  However, a
close examination of the record reveals that the report was
completed by Dr. Anand Balson.  (R. 400)(Identifying records
submitted to the ALJ in Exhibit 20F, including "10) Report of
Anand J. Balson, M.D. dated 8/23/04, consisting of 2 pages.");
see also, (R. 277, 415)(Identification line, "AB:am" typed above
the handwritten signature at the end of the report at issue).

articulated legally sufficient and factually supported reasons for the weight assigned those opinions.  (Comm'r Br. 10-14).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2008).

As plaintiff points out in his brief, the Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.[4]  (Pl. Br. 35-36)(citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent

---

[4]Plaintiff asserts that "Physicians are divided into three groups:  treating physicians, consultative physicians, and reviewing physicians."  (Pl. Br. 36)(citing Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987); Porter v. Chater, 895 F. Supp. 1427 (D. Kan. 1995)).  Although the court's analysis would be the same using plaintiff's terms, the court chooses to use the terms defined in the regulations:  "treating source," "non-treating source," and "non-examining source," respectively.  20 C.F.R. §§ 404.1502, 416.902.

with other substantial evidence in the record.  Id. (citing SSR
96-2p).  "[I]f the opinion is deficient in either of these
respects, then it is not entitled to controlling weight."  Id.

     If the treating source opinion is not given controlling
weight, the inquiry does not end.  Id.  A treating source opinion
is "still entitled to deference and must be weighed using all of
the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.
As the regulations require, where a treating source opinion is
not given controlling weight, all of the medical opinions will be
evaluated using the regulatory factors.  20 C.F.R. § 404.1527(d),
416.927(d)("Unless [the Commissioner] give[s] a treating source's
opinion controlling weight . . . [he] consider[s] all of the
[listed regulatory] factors in deciding the weight [he] give[s]
to any medical opinion.")(emphasis added).

     Those factors are: (1) length of treatment relationship and
frequency of examination; (2) the nature and extent of the
treatment relationship, including the treatment provided and the
kind of examination or testing performed; (3) the degree to which
the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(d)(2-

-18-

6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d
1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health &
Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

When evaluating all of the medical opinions pursuant to the
regulatory factors, an ALJ must remember that a physician who has
treated a patient frequently over an extended period of time (a
treating source) is expected to have greater insight into the
patient's medical condition. Doyal v. Barnhart, 331 F.3d 758,
762 (10th Cir. 2003). But, "the opinion of an examining
physician who only saw the claimant once [(a non-treating
source)] is not entitled to the sort of deferential treatment
accorded to a treating physician's opinion." Id. at 763 (citing
Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However,
opinions of non-treating sources are generally given more weight
than the opinions of non-examining sources who have merely
reviewed the medical record. Robinson v. Barnhart, 366 F.3d
1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456,
1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407,
412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789
(7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955,
963 (3d Cir. 1984)).

> A treating physician's opinion must be given
> substantial weight unless good cause is shown to
> disregard it. Frey v. Bowen, 816 F.2d 508, 513 (10th
> Cir. 1987). When a treating physician's opinion is
> inconsistent with other medical evidence, the ALJ's
> task is to examine the other physicians' reports "to

see if [they] 'outweigh[]' the treating physician's report, not the other way around." <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir. 1988).  The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.  <u>Frey</u>, 816 F.2d at 513.

<u>Goatcher</u>, 52 F.3d at 289-90.

Plaintiff's argument is cast in terms of failure to assign controlling weight to treating source opinions and failure to discuss the findings of a treating physician.  However, as with his credibility arguments, much of plaintiff's argument dealing with medical opinions lays out what plaintiff believes to be a proper analysis of the evidence regarding medical opinions, and invites the court to reweigh the evidence and arrive at a conclusion different than the ALJ.  Despite plaintiff's argument, the issue is not whether the evidence can be understood in such a manner as to support findings contrary to those made by the ALJ, but whether the ALJ applied the correct legal standard and whether his findings are supported by substantial evidence in the record as a whole.  In essence, plaintiff argues that controlling weight should have been accorded to treating source opinions, or alternatively, that the ALJ should have accorded greater weight to certain treating source opinions.  Therefore, the court will address the ALJ's determination that controlling weight cannot be accorded to the treating source opinions, and his resulting evaluation of all of the medical opinions.

**A.**   **Controlling Weight**

The ALJ devoted several pages of his decision to
consideration and evaluation of the medical opinions.  (R. 20-
23).  He specifically addressed and assigned weight to the
medical opinions of Dr. Handshy, Dr. Estivo, Dr. Ebelke, Dr.
Stein, Dr. Williams, and the non-examining source state agency
medical consultants.  Id.  He also discussed medical evidence,
reports, and treatment notes from Dr. Gorecki and Dr. Balson,
although he did not specifically name these doctors.  As
plaintiff asserts and the Commissioner agrees, the treating
source physicians are:  Dr. Handshy, plaintiff's primary care
physician from at least Feb. 2003 through the date of the
decision (R. 21, 212-37); Dr. Gorecki, a neurological surgeon who
treated plaintiff from May 6 through Dec. 3, 2003 (R. 239-52);
Dr. Estivo, an orthopedic specialist and surgeon who treated
plaintiff from Feb. through Apr. 2004 (R. 20-21, 260-66); and Dr.
Williams, a psychiatrist who treated plaintiff from Aug. 12, 2004
through the date of the decision.  (R. 22-23, 275-83, 360-99).

The threshold for denying controlling weight to treating
source opinions is low.  The ALJ need only find evidence which is
"such relevant evidence as a reasonable mind would accept as
adequate to support a conclusion that is contrary to the
conclusion expressed in the [treating source's] medical opinion."
SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp.
2008).  Here, treating source physicians hold diametrically

-21-

opposed opinions.  Dr. Handshy and possibly Dr. Gorecki[5] believe
that plaintiff needs back surgery.  (R. 239-40, 332, 334).  Dr.
Estivo "would not recommend surgery."  (R. 264).  Dr. Handshy and
Dr. Williams believe that plaintiff is unable to work.  (R. 332,
334, 423-34).  Dr. Estivo believes plaintiff can work with
limitations.  (R. 264)("He is allowed to be working with no more
than ten pounds lifted.  He is to limit his bending, twisting and
stooping to no more than one-third of a full workday."); see also
(R. 261).  Plaintiff attempts to distinguish Dr. Estivo's
opinion, arguing, "[Dr. Estivo] did not state that Plaintiff did
not need back surgery.  Instead he stated, 'I really do not think
this would be successful for him.'" (Pl. Br. 43)(misquoting (R.
264)).  Plaintiff's argument makes a distinction without a
difference.  Regarding further recommended treatment, Dr. Estivo
stated, "I would recommend physical therapy to the lumbar spine.
I would not recommend surgery.  I really do not think this would
be very successful for him."  (R. 264).  Dr. Estivo stated he
would not recommend surgery, although as plaintiff asserts, Dr.
Estivo did not use the specific terms "does not need back
surgery."

─────────────

[5]As the court explained supra, at pp. 12-14, the fact that
Dr. Gorecki was willing to proceed with back surgery does not
constitute a "conclusive recommendation for surgery."  However,
unlike Dr. Estivo, Dr. Gorecki was at least willing to proceed
with surgery.

Each treating source opinion as discussed above is substantial evidence upon which a reasonable mind might rely, and each is inconsistent with another treating source opinion.  The ALJ was correct in deciding not to give controlling weight to any treating source opinion.  Therefore, it became necessary to weigh all of the medical source opinions in accordance with 20 C.F.R. §§ 404.1527 and 416.927.  That is what the ALJ did in this case.

### B.    Weighing the Medical Opinions

The ALJ specifically discussed and assigned weight to the medical opinions of Dr. Handshy, Dr. Estivo, Dr. Ebelke, Dr. Stein, Dr. Williams, and the non-examining source state agency medical consultants.  (R. 20-23).  The ALJ gave substantial weight to Dr. Handshy's opinion that plaintiff was restricted to lifting ten pounds occasionally and less than ten pounds frequently, but he rejected the other restrictions opined by Dr. Handshy.  (R. 21-22).  The ALJ explained his reasons:  (1) Dr. Handshy's opinion regarding disability is an opinion on an issue reserved to the Commissioner; (2) Dr. Handshy's opinion is not supported by his objective findings; (3) Dr. Handshy's opinion is contradicted by the opinion of plaintiff's treating orthopedic specialist (Dr. Estivo); (4) Dr. Handshy confirmed plaintiff is neurologically intact, (5) Dr. Handshy did not test for symptom magnification, and (6) Plaintiff's magnification of symptoms casts doubt on his reports of pain.

Plaintiff points to a Lumbar spine CT exam on Nov. 18, 2003,[6] argues that this report contradicts finding #2, and implies that the ALJ interposed his own medical expertise over that of the treating physicians. (Pl. Br. 39-40). As plaintiff argues, the Nov. 18, CT report shows a "Small amount of extravasation of contrast . . . probably on the basis of annular tears." (R. 252). However, the ALJ also had before him the reports of Drs. Ebelke, Estivo, and Stein. Dr. Stein provided a "Radiology Review," showing x-rays of the lumbar spine within normal limits on Mar. 7, 2003; MRI of the lumbar spine on Mar. 18, 2003 showing "some bulging" of two disks, degenerative narrowing, and "No definite neural compression;" x-rays of the lumbar spine within normal limits on Nov. 18, 2003; and discography films and CT scan on Nov. 18, 2003 showing "some dye leakage from the nucleus" of two disks. (R. 269-70). Dr. Ebelke's report indicated he had reviewed the medical records including the discograms done Nov. 18, 2003, x-rays done Mar. 7 and Nov. 18, 2003, and MRI done Mar. 18, 2003. (R. 254-55). Dr. Ebelke found the lumbar x-rays "normal at all levels," and acknowledged specific findings on the MRI but concluded, "There is nothing here to explain the intermittent right leg symptoms. Overall, I see no surgically significant lesions, nor do I see

---

[6]Plaintiff states that the CT was done Nov. 20, 2003. However, the record reveals an "Exam Date: 11/18/2003," although the report was electronically signed on 11/20/2003. (R. 252).

anything that could be interpreted as acute or related to any specific trauma." (R. 255-56). Dr. Ebelke noted that the Nov. 18, 2003 discogram found no true herniation, and concluded, "The foramina size looks adequately open at all levels." (R. 256). He found that plaintiff's "injury was nothing more than a **lumbar strain**." (R. 256)(emphasis in original). Dr. Estivo's records reveal: an x-ray of the lumbar spine on Feb. 25, 2004 noting only "Some degenerative changes;" plaintiff was given an NCT/EMG which was negative; and Dr. Estivo concluded that plaintiff had a Lumbar spine strain. (R. 261, 264, 266).

While the Nov. 18, 2003 lumbar spine CT by itself can be construed to contradict the ALJ's finding, the ALJ considered much more than just the Nov. 18, 2003 CT as discussed above and summarized in the ALJ's decision. The court cannot say that the ALJ's finding is not supported by substantial evidence in the record as a whole. Moreover, the record and the decision reveal that the ALJ did not interpose his own "medical expertise" over that of the physicians. Rather, as is his duty, the ALJ considered all of the evidence, including the medical evidence; considered and weighed the medical opinions; and made findings resolving the ambiguities in the conflicting evidence. This duty involves deciding which evidence and which medical opinions should be accorded the greatest weight. The decision does not reveal that the ALJ made an independent <u>medical</u> judgment

regarding the evidence, but rather that he weighed the evidence and came to a reasoned decision based upon the totality of that evidence.  Because the medical opinions are contradictory, of necessity the ALJ's decision contradicts some medical opinions.

Plaintiff also argues that the ALJ gave unwarranted weight to Dr. Ebelke's concerns regarding symptom magnification, since Dr. Ebelke is the only physician who found such a factor.  As the ALJ stated and plaintiff acknowledges, Dr. Ebelke noted "obvious symptom magnification/over-reaction signs."  (R. 22, 255).

However, contrary to plaintiff's argument, the record shows other doctors noted symptom magnification also.  Dr. Stein quoted Dr. Ebelke's explanation of symptom magnification/over-reaction. (R. 269).  Plaintiff argues that Dr. Stein did not test for or find symptom magnification.  (Pl Br. 42).  However, Dr. Stein noted on his examination that, "Considerable back pain is described with gentle axial compression.  Passive truncal rotation with the shoulders and hips in the same plane causes complaints of substantial back pain."  (R. 271).  Moreover, a fair reading of Dr. Stein's summary shows that he agrees with Dr. Ebelke that plaintiff exhibits symptom magnification.  Dr. Stein acknowledged that Dr. Ebelke noted some factors beyond discography which counseled against surgery.  Dr. Stein stated, "This is the case and these factors are significant enough to make me reluctant to recommend surgery."  (R. 271-72).  After

discussing success rate with such surgery and the fact that plaintiff's weight is a substantial concern, Dr. Stein continued, "My other major concern is in regard to the presence of multiple Waddell's signs of symptom magnification." (R. 272). Finally, Dr. Stein recommended "psychological evaluation to rule out the presence of secondary, emotional factors" in this case. <u>Id.</u> While on these facts, it might be argued (as plaintiff does) that Dr. Stein did not specifically find symptom magnification, it is also appropriate to find (as did the ALJ) that Dr. Stein believed plaintiff exhibited signs of symptom magnification.  The facts which indicate that Dr. Stein was presenting his own opinion are that he stated "this is the case" indicating agreement with Dr. Ebelke's opinion; he noted plaintiff's description of pain with "gentle compression," and "substantial pain" with passive rotation; he stated symptom magnification is "<u>My</u> other major concern;" he mentioned "multiple Waddell's signs" which had not been specifically mentioned by Dr. Ebelke; and he recommended psychological evaluation.  The court cannot say the ALJ erred in finding that Dr. Stein noted evidence of symptom magnification.

Finally, as the ALJ noted in his decision, at a physical exam on Aug. 23, 2004, Dr. Balson noted possible evidence of symptom magnification.  (R. 20, 277).  Dr. Balson's records note,

> Range of movements of the lumbar spine are again not possible because of noncooperation. . . .  He cries in pain even when I touch his thoracic and lumbar spine. He says the pain increases with gentle axial

-27-

compression.   Straight leg raising test is positive at
even five degrees

. . . The symptoms are out of proportion to the
objective findings and MRI scan.   Physical exam is not
possible because of noncooperation.   It is not clear if
he does have symptom magnification.   Based on my exam
today, I do not see any objective evidence of
disability.   The exam is difficult because of
noncooperation.

(R. 277).   In the light of this record evidence, it is not error

for the ALJ to find that Dr. Handshy's failure to test for

symptom magnification is a reason to discount a portion of his

medical opinion.

The ALJ adopted as well-supported Dr. Estivo's opinion that

plaintiff is limited to lifting ten pounds, but rejected Dr.

Estivo's opinion that plaintiff may bend, twist, or stoop only

occasionally.   (R. 21).   Plaintiff argues that the ALJ's finding

"seems to turn judicial review into a guessing game" because the

ALJ "never specifically identifies what 'evidence does not show

significant limitations.'" (Pl. Br. 43)(quoting (R. 21)).

Plaintiff's argument misses the point of the ALJ's finding.   The

ALJ did not find that the "evidence does not show significant

limitations," rather he stated that he rejected Dr. Estivo's

opinion that plaintiff may bend, twist, or stoop only

occasionally because "the evidence does not show significant

limitations in the claimant's ability to bend, twist, and stoop."

(R. 21)(emphasis added).   The law does not require citation to

evidence which establishes that there is no evidence regarding a

-28-

thing.  Such a citation is a logical impossibility.  The ALJ
stated that there is no evidence showing significant limitation
in plaintiff's ability to bend, twist, and stoop.  He need not
cite to "no evidence," which does not exist.

In stating his opinion, Dr. Estivo did not cite to specific
facts which indicate limitations in the ability to bend, twist,
or stoop, and the ALJ is justified in using that fact to discount
a portion of Dr. Estivo's opinion.  In such circumstances, if the
ALJ erred, and there is in fact evidence showing significant
limitations in plaintiff's ability to bend, twist, and stoop, it
is plaintiff's burden to present such evidence to the court.
Plaintiff has not done so, and the court's review of the record
does not show evidence establishing significant limitations in
plaintiff's ability to bend, twist, and stoop.  Plaintiff has
shown no error in the ALJ's evaluation of Dr. Estivo's opinion.

Plaintiff claims the ALJ failed to discuss or consider Dr.
Gorecki's findings or opinions, and that error requires remand
for proper consideration of Dr. Gorecki's opinion.  As plaintiff
argues, the record must demonstrate that the ALJ considered all
of the evidence.  However, the ALJ is not required to discuss
every piece of evidence.  He must discuss evidence supporting his
decision, uncontroverted evidence he chooses not to rely upon,
and significantly probative evidence he rejects. Clifton v.
Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).   But, he may

not selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations.  <u>Owen v. Chater</u>, 913 F. Supp 1413, 1420 (D. Kan. 1995).

Plaintiff does not establish that the ALJ erred in this regard.  As plaintiff argues, the ALJ did not mention Dr. Gorecki's name.  However, he did discuss evidence relating to Dr. Goecki's treatment of plaintiff.  He stated (as do Dr. Gorecki's treatment records) that plaintiff did not report improvement from physical therapy or epidural injections.  (R. 14); <u>see</u> (R. 242, 244, 245, 246).  The ALJ referred to a "neurosurgical consultation on May 6, 2003" which was performed by Dr. Gorecki. (R. 17)(citing (Ex. 4F/45 (R. 247))).  He cited Dr. Gorecki's treatment notes when he stated that plaintiff "credibly had pain after his injury."  (R. 19)(citing (Exs. 4F/45; 6F/65)). Finally, the ALJ indirectly referred to Dr. Gorecki when he wrote, "Dr. Handshy stated that back surgery had been recommended by the claimant's neurosurgeon."  (R. 21)(citing (Ex. 15F/130-33)).  However, as previously discussed in reviewing the ALJ's credibility finding, the court cannot find error in the ALJ's conclusion that there was "no conclusive recommendation for surgery by any . . . <u>neurological</u> source."  Dr. Gorecki and Dr. Stein, who is not a treating physician, are the only physicians identified in the record as neurological surgeons.

In light of these facts and the ALJ's decision as discussed above, plaintiff simply has not shown that the ALJ selectively abstracted evidence favorable to his decision or ignored Dr. Gorecki's opinions or treatment notes which were supportive of plaintiff's position.  He has not shown that the portions of Dr. Gorecki's treatment notes or opinions which were not specifically discussed by the ALJ constitute either uncontroverted or significantly probative evidence in light of the facts as discussed by the ALJ.  To the extent plaintiff argues that the ALJ should have addressed Dr. Gorecki's opinion that plaintiff needed surgery, the ALJ addressed that opinion when he addressed Dr. Handshy's opinions, and further discussion is unnecessary.

Finally, plaintiff claims the ALJ erred in failing to give substantial weight to Dr. Williams's opinion.  The ALJ summarized Dr. Williams's opinion:

> Psychiatrist Kenneth Williams, M.D., completed a mental impairment questionnaire for the claimant on April 30, 2007 in which he stated that the claimant has poor to no ability to perform most mental work functions and would be expected to incur more than 3 absences a month due to his mental disorders.  He reported that the claimant had marked restrictions in activities of daily living, social functioning, and concentration persistence, or pace, and had experienced 3 episodes of decompensation.  He did not complete items on the questionnaire asking for an explanation of these limitations.

(R. 22)(citing (Ex. 21F/219-229)(R. 423-34)).  A fair reading of the evidence supports the ALJ's summarization, and plaintiff does not claim that the summary is erroneous.

-31-

The ALJ determined not to give substantial weight to Dr. Williams's opinion, and stated six reasons to support his determination. (1). Dr. Williams's decision to set appointments only every two months indicates the doctor "did not consider the claimant's symptoms as problematic as described in the assessment." (R. 22). (2). The treatment notes showed depression, anxiety, and panic attacks consistently improved after plaintiff began seeing Dr. Williams. <u>Id.</u> (3). By Aug. 3, 2006 plaintiff was denying anxiety. <u>Id.</u> (4). The GAF[7] score of 55 assigned in April, 2007 "indicates moderate symptoms and/or moderate difficulties in social, occupation, or school functioning. <u>Id.</u> (5). Dr. Williams's assessment is not supported by his objective findings, including a GAF score of 55 and Dr. Williams's statement that plaintiff is doing well with his medication. <u>Id.</u> (6). Dr. Williams's assessment is inconsistent with plaintiff's daily activities. <u>Id.</u>

---

[7]Global Assessment of Functioning. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). <u>Id.</u> at 32. GAF is a classification system providing objective evidence of a degree of mental impairment. <u>Birnell v. Apfel</u>, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing <u>Schmidt v. Callahan</u>, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

With regard to reason number one, plaintiff argues that the ALJ merely made a speculative inference from the doctor's report because the ALJ does not have the medical expertise to determine that appointments only every two months indicate that plaintiff's problems are not as severe as described in the doctor's assessment. (Pl. Br. 45-46). Plaintiff is correct that an ALJ is not a medical expert, and may not make speculative inferences from medical reports. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). However, as the court in McGoffin recognized, an ALJ may discount a treating source opinion on the basis of contradictory medical evidence. Id. As discussed above, and as recognized in McGoffin, an ALJ must weigh contradictory medical reports, resolve any ambiguities presented, and assess the weight to be accorded the various medical opinions.

Were reason number one the only reason relied upon in discounting Dr. Williams's opinion, perhaps a different result would be required. However, in the circumstances, the court does not find reason number one erroneous. As the ALJ noted, at his initial evaluation of plaintiff on Aug. 12, 2004, Dr. Williams assessed a GAF score of 45. (R. 22, 279). A GAF score in the range of 41-50 indicates "**Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning**." DSM-IV, at 32(emphasis in original). However, almost immediately thereafter Dr. Williams began seeing plaintiff only every couple

of months.  In fact, Dr. Williams began planning for follow-up every "couple of months" (R. 275), and the court was unable to find a single instance where there were less than three months between visits with Dr. Williams.  (R. 275)(Jan. 13, 2005); (R. 393)(Apr. 21, 2005); (R. 386)(Jul. 21, 2005); (R. 382)("Follow-up in about 3 months")(Oct. 20, 2005); (R. 377)("about 3 months")(Feb. 2, 2006); (R. 370)("about 3 months")(May 4, 2006); (R. 366)("Follow-up with in 3-4 months")(Nov. 14, 2006). Physician follow-up which is required only every "couple of months" or "3-4 months," even to a lay observer such as the ALJ, in the circumstances, and considering the other reasons relied upon by the ALJ, is inconsistent with the opinion of Dr. Williams that plaintiff has a serious mental impairment which would cause plaintiff to be absent from work more than three times a month and has only fair, poor, or no ability to perform twenty out of twenty-five mental abilities required in work, or twelve out of sixteen mental abilities required in unskilled work.

    Plaintiff makes a general argument attacking reasons 4, 5, and 6 in which he argues that the ALJ's decision does not look at plaintiff's mental impairments over the entire course of treatment, and that the ALJ is attempting "to portray Plaintiff as a happy-go-lucky man who is driving throughout an enormous town with his arm hanging out the driver's side window waving to people as he glides down the street and whimsically stopping

-34-

here, and there, to visit with an abundance of friends spread all over town." (Pl. Br. 46). Despite plaintiff's colorful and creative depiction, the court finds no error in the given reasons. Although the ALJ's findings present a picture of plaintiff's capabilities which is greater than that presented by Dr. Williams's assessment or by plaintiff's explanation of the evidence, the ALJ looked at plaintiff's mental impairments over the entire relevant period, and supported his reasons with evidence from the record. The ALJ's summary, discussion, and findings reflect the fact that plaintiff has mental and physical impairments which negatively affect his ability to perform basic work activities. He does not paint an unfairly rosy picture of plaintiff's activities or plaintiff's abilities.

The ALJ noted that Dr. Williams assigned a GAF of 45 in his initial consultation with plaintiff, that the record indicate improvement over time, that plaintiff experienced short-term setbacks, and that Dr. Williams assigned a GAF of 55[8] in his Apr. 2007 assessment. (R. 22). Plaintiff's brief provides additional details from the record not included in the ALJ's summary, but the ALJ is not required to restate each fact in the record, and the additional details provided by plaintiff are not inconsistent

---

[8]A GAF score of 55 falls in the range (51-60) defined as, **"Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning** (e.g. few friends, conflicts with peers or co-workers)." DSM-IV at 32(emphasis in original).

with or contrary to the summary provided by the ALJ.  Again,
absent a specific showing that the ALJ's findings are not
supported by substantial evidence in the record as a whole, the
court will not reweigh the evidence.

## V.   Severity of Mental Impairments

Plaintiff makes two arguments with regard to mental
impairments.  He argues that the ALJ did not properly assess the
severity of plaintiff's mental impairments (Pl. Br. 30-34), and
that consequently the ALJ improperly found that plaintiff "is
capable of understanding, remembering, and carrying out simple
instructions consistent with unskilled work."  (Pl. Br.
56)(quoting (R. 17-18)).  The Commissioner argues that the ALJ
properly applied the psychiatric review technique, and properly
evaluated the severity of plaintiff's mental impairments and
their resulting limitations.

As previously mentioned; supra at 2-3; in evaluating the
severity of plaintiff's impairments the ALJ applied the
psychiatric review technique and determined that plaintiff's
mental impairments cause mild restrictions in activities of daily
living; mild difficulty maintaining social functioning; and
moderate difficulty maintaining concentration, persistence, or
pace; and that plaintiff has not had "repeated episodes of
extended decompensation."  (R. 17).  Consequently, he determined
at step two of the sequential process that plaintiff's mental

-36-

impairments are "severe" within the meaning of the Act, but at step three of the process he determined plaintiff's mental impairments do not meet or equal the severity of any listed mental impairments.  (R. 14-17).

In arguing that the ALJ improperly assessed the severity of plaintiff's mental impairments, plaintiff relies to a great extent upon his view of the evidence, Dr. Williams's opinion, plaintiff's son's statement, and plaintiff's reports, statements, and testimony.  (Pl. Br. 31-34).  However, as previously discussed the ALJ discounted Dr. Williams's opinion; supra at 31-35; discounted the credibility of plaintiff's son's statement; supra at 14; and discounted the credibility of plaintiff's allegations.  Supra at 8-16.  Moreover, other than these individual and expert opinions (that plaintiff's mental impairments are more severe than found by the ALJ), plaintiff points to no direct evidence in the record which establishes that plaintiff's mental impairments are more severe.  Even the evidence cited in support of plaintiff's argument does not compel a finding of greater severity than that found by the ALJ, but would merely support such a finding of greater severity if it had been made.  As mentioned repeatedly in this opinion, the court may not set aside the ALJ's findings that are supported by substantial evidence in the record viewed as a whole merely because plaintiff presents (or the court holds) a contrary view

of the evidence that might also be supported with substantial evidence in the record viewed as a whole.

Plaintiff claims that "the ALJ improperly shrinks the record." (Pl. Br. 31). As with much of his brief, plaintiff seems to assert that the ALJ's failure to mention <u>any</u> given fact presented in the record is an error requiring remand. Plaintiff's view is erroneous and impracticable. As previously noted, the ALJ is not required to discuss every piece of evidence. He must discuss evidence supporting his decision, uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects. <u>Clifton</u>, 79 F.3d at 1009-10. In light of the five-hundred-page record in this case (and in most social security reviews), any other rule would require every decision by the Commissioner to be scores of pages in length and to make an exhaustive recitation of the facts lest the ALJ fail to cite some fact and be subject to remand for failure to cite some fact germane to the case. Such a rule would produce gridlock in the disability review process and would cause the Commissioner to be unable to meet his statutory duties.

Plaintiff argues that superlatives are "Words of art" which "are meaningless without a frame of reference." (Pl. Br. 32)(citing <u>Gude[9] v. Sullivan</u>, 956 F.2d 791, 794 (8th Cir. 1992)).

---

[9]Plaintiff erroneously refers to this case as "<u>Gade v. Sullivan</u>." Pl. Br. 32.

Based upon this assertion, plaintiff claims that the ALJ erred in evaluating plaintiff's mental impairments because he cited mental health treatment records which show that plaintiff is "doing well," panic attacks are under "better control" with medication, and plaintiff demonstrated "improved" depressive symptoms. Id.(citing (R. 17)).  Plaintiff argues that the court cannot know plaintiff's stated relative condition without a frame of reference for comparison.  Id.(i.e., "'Doing well,' compared to what?").

The case to which plaintiff cites does not support a finding of error in this case.  In Gude, the ALJ noted statements in a treating physician's report "which in the ALJ's view minimized the significance of Gude's symptoms."  Gude, 956 F.2d at 793("in remission," "controlled", "stabilized," no seizures for some time, "doing well").  On the strength of these statements the ALJ discounted the physician's opinion as inconsistent with the statements.  Gude, 956 F.2d at 793-94.  However, the court noted that the record contained no medical evidence contrary to the treating physician's opinion, and stated "we believe the ALJ took these statements out of context and ignored the thrust of [the treating physician's] report."  Id. at 793.  In context, the treating physician's report acknowledged Gude's condition, and explained that she continued to have significant pain, fatigue, and other disabling symptoms.  Id. at 793-94.  The court

concluded, "In sum, nothing in the record suggests that the symptoms described by [the physician] during his treatment of Gude are fabricated or inconsistent with the diagnosis."  Id. at 794.

Here, there is considerable conflicting medical evidence and conflicting medical opinions, and it is plaintiff who has taken the ALJ's statements out of context.  The superlatives of which plaintiff complains are taken from a two-sentence summary of plaintiff's progress over time in mental health treatment and while taking medications.  A fair reading of the exhibits at issue supports the summary.  The sentences are contained in a relatively lengthy paragraph summarizing the record evidence relevant to plaintiff's capability to maintain concentration, persistence, or pace.  (R. 17, first full paragraph).  In the context of the record as a whole, in the context of the treatment notes to which the ALJ cites, and in the context of the paragraph in which the ALJ uses the superlatives, there is a frame of reference which provides appropriate meaning to the superlatives used.  The court finds no error in the ALJ's assessment of the severity of plaintiff's mental impairments.

Plaintiff complains that the RFC assessed by the ALJ is erroneous in stating that, "The claimant is capable of understanding, remembering, and carrying out simple instructions consistent with unskilled work."  (Pl. Br. 56)(quoting (R. 17-

18)).  Specifically, plaintiff claims the ALJ's mental RFC
finding is vague, does not relate to any function-by-function
assessment as required by SSR 96-8p, and the words "simple" and
"unskilled" are "flawed and improper."  (Pl. Br. 56-57)(citing
SSR 96-8p; and <u>Weiderholt v. Barnhart</u>, 2005 WL 290082 at *5 (10th
Cir. Feb. 8, 2005)).

     As plaintiff asserts, assessment of RFC involves a function-
by-function consideration of each work-related ability <u>before</u>
expressing the RFC in terms of the exertional categories of
"sedentary," "light," and so forth.  SSR 96-8p, West's Soc. Sec.
Reporting Serv., Rulings 143, 145-46 (Supp. 2008).  In SSR 96-8p,
the Commissioner clarified the difference between evaluating the
severity of mental limitations at steps two and three of the
sequential evaluation process (based upon the four functional
areas identified in the psychiatric review technique), and
evaluating the ability to meet mental demands of jobs at steps
four and five.  <u>Id.</u> at 147.  "The mental RFC assessment used at
steps 4 and 5 of the sequential evaluation process requires a
more detailed assessment by itemizing various functions contained
in the broad categories found in" the four functional areas.  <u>Id.</u>
RFC must be expressed in terms of work-related function.  <u>Id.</u> at
148.  "Work-related mental activities generally required by
competitive, remunerative work include the abilities to:
understand, carry out, and remember instructions; use judgment in

-41-

making work-related decisions; respond appropriately to
supervision, co-workers and work situations; and deal with
changes in a routine work setting." Id. at 149; see also 20
C.F.R. §§ 404.1521(b)(3-6), 416.921(b)(3-6)(giving precisely the
same examples of basic mental work activities). Therefore, an
ALJ should not state a mental RFC in terms of the four functional
areas, but should make a function-by-function assessment of each
of the work-related mental activities relevant to the case at
hand.

This is precisely the procedure applied by the ALJ in this
case. He evaluated the severity of plaintiff's mental
impairments at steps two and three of the evaluation process
using the four mental functional areas presented in the
psychiatric review technique. (R. 14-17). He determined at step
two that plaintiff's mental impairments are "severe" within the
meaning of the Act, and at step three that plaintiff's mental
impairments do not meet or medically equal the severity of any
mental impairment listed in the Listing of Impairments. Id.
Thereafter, in assessing plaintiff RFC, the ALJ evaluated
plaintiff's capacity for performing work-related functions,
including his ability to perform work-related mental activities.
(R. 18-24). He concluded that plaintiff "is capable of
understanding, remembering, and carrying out simple instructions
consistent with unskilled work." (R. 17-18).

Plaintiff fails to recognize that the ALJ performed a function-by-function assessment and that the ability to "understand, carry out, and remember instructions" is one of the work-related mental activities referred to in SSR 96-8p, and "Understanding, carrying out, and remembering <u>simple</u> instructions" is an example of a basic mental work activity necessary to do most jobs as presented in 20 C.F.R. §§ 404.1521(b)(3), 419.921(b)(3)(emphasis added).

The Commissioner has identified twenty mental activities routinely evaluated in performing a Mental Residual Functional Capacity Assessment (R. 299-300), and those same mental activities are included in slightly altered form within the twenty-five mental activities evaluated in the "Mental Impairment Questionnaires" completed by Dr. Williams in this case.  (R. 426-27, 432-33).  The mental activities routinely evaluated by the Commissioner include:  "The ability to understand and remember very short and simple instructions," "The ability to understand and remember detailed instructions," "The ability to carry out very short and simple instructions," and "The ability to carry out detailed instructions."  (R. 299).  The mental activities evaluated by Dr. Williams include: "Understand and remember very short and simple instructions," "Carry out very short and simple instructions," "Understand and remember detailed instructions," and "Carry out detailed instructions."  (R. 426-27, 432-33).

-43-

A fair reading of the decision at hand shows that the ALJ performed a function-by-function assessment of plaintiff's mental abilities and concluded that plaintiff is able to understand, remember, and carry out simple instructions--the same basic mental work activity given as an example in 20 C.F.R. §§ 404.1521(b)(3), 416.921(b)(3).  This is not error.  The fact that the finding combines two functions (the ability to understand and remember simple instructions, and the ability to carry out simple instructions) is of no import because the combination is not mutually exclusive, the example given in the regulations combines two functions, and plaintiff points to no evidence in this case which would preclude the combined finding.

The case cited by plaintiff to argue that the ALJ's use of the terms "simple" and "unskilled" is improper, does not require a different result.  In Weiderholt, the ALJ instructed the vocational expert that plaintiff was "limited to simple, unskilled job tasks."  Wiederholt v. Barnhart, No. 03-3251, 121 Fed. Appx. 833, 839, 2005 WL 290082, 4 (10th Cir. 2005).  The court noted that "The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments," and remanded the case for further consideration of all of the ALJ's findings.  Id. 121 Fed. Appx. at 839, 2005 WL 290082 at *5.  Here, the ALJ did

not use the broad, unspecified term "simple, unskilled job
tasks."  Rather he specifically found that plaintiff "is capable
of understanding, remembering, and carrying out simple
instructions" as used in the regulations providing an example of
basic mental work activities.  (R. 17-18).  This is a finding
with which a qualified vocational expert is familiar, and
plaintiff does not attack the qualifications of the expert here.

Moreover, the ALJ found that the basic mental work activity
at issue is "consistent with unskilled work."  (R. 18).
"Unskilled work" is also a term defined in the regulations.  20
C.F.R. §§ 404.1568(a), 416.968(a).  It is "work which needs
little or no judgment to do simple duties that can be learned on
the job in a short period of time."  Id.  Therefore, as used by
the ALJ, the terms "simple" and "unskilled" are not vague, broad,
or unspecified, and the court finds no error in their use in
describing plaintiff's mental RFC either in the ALJ's decision or
in the hypothetical question presented to the vocational expert.

In his final argument, plaintiff shows that plaintiff was
subsequently adjudged by the Commissioner to be disabled
effective Jun. 15, 2007, one day after the decision at issue
here, and argues that this fact establishes that plaintiff must
have been disabled on or before the date the decision here was
issued.  The court is charged with making its determination based
"upon the pleadings and transcript of the record," and is

-45-

cautioned that "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g)(sentences four and five).  As discussed above, the court has determined that the Commissioner applied the correct legal standard in making his decision, and that substantial evidence in the record as a whole supports the decision.  Therefore, the court holds that the findings of the Commissioner are conclusive.

**IT IS THEREFORE RECOMMENDED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 20th day of August 2008, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**


-46-